FILED

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

201 DEC 26  P 2: 29

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| KINETIC SYSTEMS, INC.<br>48400 Fremont Blvd.<br>Fremont, California 94538 | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) Case No. 1:13-CV-1576<br>) (AJT/IDD) |
| MANHATTAN CONSTRUCTION COMPANY<br>5601 S. 122nd E. Ave.<br>Tulsa, Oklahoma 74146 | )<br>)<br>)<br>) |
| Serve: Registered Agent<br>CT Corporations System<br>4701 Cox Road, Suite 285<br>Glen Allen, Virginia 23060 | )<br>)<br>)<br>) |
| and | )<br>) |
| TORCON, INC.<br>328 Newman Springs Road<br>Red Bank, New Jersey 07701 | )<br>)<br>)<br>) |
| Serve: Registered Agent<br>CT Corporations System<br>4701 Cox Road, Suite 285<br>Glen Allen, Virginia 23060 | )<br>)<br>)<br>) |
| and | )<br>) |
| MANHATTAN TORCON, A JOINT VENTURE<br>7600 Leesburg Pike, Suite 150 West<br>Falls Church, Virginia 22043 | )<br>)<br>)<br>) |
| Serve: MANHATTAN TORCON,<br>A JOINT VENTURE<br>7600 Leesburg Pike, Suite 150 West<br>Falls Church, Virginia 22043 | )<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

## COMPLAINT

Plaintiff, Kinetic Systems, Inc. ("Kinetics" or "Plaintiff"), by counsel, moves this Court for judgment against Defendants Manhattan Torcon, A Joint Venture, Manhattan Construction Company, and Torcon, Inc. (collectively "Defendants") on the following grounds:

### PARTIES

1.      Plaintiff Kinetics is a California corporation with its principal place of business located at 48400 Fremont Blvd., Fremont, California 94538.   Kinetics specializes in, among other things, installing mechanical and piping systems for construction projects.

2.      Defendant Manhattan Torcon, A Joint Venture ("MTJV") is a joint venture partnership with its principal place of business located at 7600 Leesburg Pike, Suite 150 West, Falls Church, Virginia  22043.  Upon information and belief, the joint venture entity known as MTJV consists of two general construction contractors, Manhattan Construction Company and Torcon, Inc.

3.      Upon information and belief, Manhattan Construction Company ("Manhattan") is an Oklahoma company with its principal place of business located at 5601 S. 122nd E. Avenue, Tulsa, Oklahoma  74146.

4.      Upon information and belief, Torcon, Inc. ("Torcon") is a New Jersey corporation with its principal place of business located at 328 Newman Springs Road, Red Bank, New Jersey 07701.

## JURISDICTION AND VENUE

5.     This Court possesses original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and the matter in controversy is between citizens of different states.

6.     Further, this Court has jurisdiction to grant the declaratory relief sought in this Complaint pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     Venue is proper in the United States District Court for the Eastern District of Virginia, Alexandria Division, pursuant to 28 U.S.C. § 1391(b)(2) and/or (b)(3).

## FACTUAL ALLEGATIONS

**A.     The Project Giving Rise to this Action**

8.     In 2009, the U.S. Army Corps of Engineers ("Corps") issued for public bidding a contract to construct a six-story biological research facility for the end user, the U.S. Army Medical Research Institute of Infectious Diseases ("USAMRIID"), located at Fort Detrick, Maryland (hereinafter the "Project").

9.     This facility contains state-of-the-art laboratory suites for the research and development of medical solutions to biological threats.

10.     The unique purpose of the research facility required the Project to be constructed with Biosafety Level 3 and Level 4 laboratories that would allow for research involving extremely dangerous pathogens.

11.     The mechanical piping systems incorporated in the Project design and necessary to support USAMRIID's research are highly specialized to ensure the safe transport and disposal of contaminated materials in the facility.

**B.    Kinetics' Subcontract Was Based Upon the Piping Design Furnished by MTJV**

12.    MTJV submitted a bid proposal to the Corps for award of the prime contract for the Project.

13.    In preparing its proposal, MTJV sought bids from prospective subcontractors, including Kinetics, to undertake the specialized piping work required for the Project.

14.    MTJV provided detailed plans and specifications for the Project mechanical piping work ("Mechanical Piping Design") to prospective mechanical subcontractors, including Kinetics.

15.    The Mechanical Piping Design served as the basis for prospective subcontractors' bids for the piping work, including Kinetics.

16.    The Mechanical Piping Design furnished by MTJV reasonably purported to represent a comprehensive depiction of the design for the piping work.

17.    The detailed Mechanical Piping Design furnished by MTJV, which included the design for the specialized piping work in the testing laboratories, appeared on its face to be complete, integrated with other elements of the Project, and indicated that it could be built as specified.

18.    Relying upon the detailed Mechanical Piping Design furnished by MTJV and the scope of work indicated therein, Kinetics submitted a lump-sum, fixed price bid to MTJV for the subcontract to perform the piping work on the Project.

19.    MTJV was awarded the prime contract for the Project by the Corps in 2009.

20.    Although Kinetics was advised by MTJV that it did not submit the lowest price among prospective subcontractors, MTJV awarded the piping subcontract to Kinetics because of its expertise in this type of work.

21.    Relying on the Mechanical Piping Design by MTJV during the bid phase, Kinetics entered into a subcontract agreement with MTJV on or about September 8, 2009 for the lump sum price of $56,975,000.  A true and correct copy of this Subcontract is attached hereto as Exhibit 1.

22.    The Subcontract price was based upon the defined scope of work indicated in the detailed Mechanical Piping Design and a reasonable work plan.

23.    Among the express and implied terms of the Subcontract, MTJV had an obligation and duty, among other things, to:

a.    provide complete and accurate design documents, including plans and specifications, for the Project;

b.    process modifications to the Subcontract in a timely and reasonable manner;

c.    manage and direct the work on the Project in a reasonable manner so as not to disrupt Kinetics in the performance of its Subcontract work;

d.    not unreasonably delay, interrupt, obstruct, or otherwise hinder Kinetics in the performance of its Subcontract work;

e.    provide all information in MTJV's possession or control that is reasonably necessary for Kinetics to perform its Subcontract work;

f.    exercise discretion afforded under the Subcontract in good faith;

g.    act in good faith according to the usual and prudent practices of contract administration recognized in the construction industry;

h.    equitably adjust the Subcontract price and time for performance in the event that (i) Kinetics was required to perform changed or extra work beyond the scope of the

original Subcontract, or (ii) Kinetics' work was delayed, interrupted, obstructed or otherwise hindered by MTJV; and

       i.     make full and timely payments due for the original Subcontract scope of work and/or for changes or extra work.

**C.**    **Kinetics Experienced Numerous Problems with the Mechanical Piping Design Furnished by MTJV**

24.    Contrary to the representations made by MTJV in issuing the Mechanical Piping Design, the piping systems were not properly integrated into the various other aspects of the overall Project design, and as a result, the piping work could not be installed as depicted in the Mechanical Piping Design to construct a properly functioning system.

25.    Certain structural and architectural elements in the overall Project design conflicted with the layout of the piping in the Mechanical Piping Design issued to Kinetics.

26.    MTJV ultimately directed wholesale modifications to the piping layout to address the non-constructible Mechanical Piping Design.

27.    After the Project commenced, MTJV exacerbated the problems encountered by the unworkable and defective design when performing its contractual obligation to the Corps to create a 3-D model of the Project.

28.    The 3-D model was designed to be utilized by MTJV and the various trades to construct the Project.

29.    During the specified modeling process, however, MTJV failed to properly replicate the architectural and structural elements of the Project design in the 3-D model and/or coordinate changes to the architectural and structural design with Project subcontractors responsible for that work.

30.    Due to the unworkable and defective design and MTJV's failure to properly

conduct the modeling process, numerous conflicts surfaced during Kinetics' installations of the piping.

31.     For example, the elevation of ceilings in the "High Containment Area" were modified by MTJV in the 3-D modeling process, but then not coordinated amongst all of the subcontractors, which led to the ceilings ultimately being installed at a higher elevation, leaving less space for Kinetics to install its piping than it had anticipated.

32.     Another problem that developed during the modeling phase was MTJV's failure to timely select specialized equipment, which ultimately led to significant changes to the Subcontract work as well as delays and disruptions to Kinetics' modeling and installation efforts.

33.     The pervasive deficiencies in the design and MTJV's 3-D models required constant modifications to Kinetics' scope of work during the Project.

34.     The myriad design changes caused substantial delays to the duration of the Project, out-of-sequence work, and inefficiencies, thereby resulting in substantial, additional time and expense for which MTJV has failed to reimburse Kinetics.

**D.      MTJV Improperly Refused to Provide Schedule Data So that Kinetics Could Plan its Performance and Analyze the Effects of Changes and Delays**

35.     MTJV was contractually required to prepare a baseline Critical Path Method ("CPM") schedule for the Project and to update the CPM schedule on a monthly basis.

36.     The purpose of the CPM schedule is to, among other things, allow for the effective coordination of the activities to be performed by subcontractors.

37.     As the magnitude and extent of the design errors became more and more apparent, and changes to Kinetics' work ordered by MTJV began to accumulate, it became manifest that Kinetics was precluded from properly managing its work plan or quantifying the effects of the changes, delays, disruptions and schedule alterations, without analyzing the electronic versions

of the CPM schedules maintained by MTJV.

38.    The logic denoting the relationship of work activities and certain start/completion date information is only discernible from the electronic versions of the CPM schedule and not in paper printouts.

39.    Access to the electronic versions of the CPM schedule for the Project would have allowed Kinetics to identify the impact of schedule modifications made by MTJV and mitigate additional costs associated with changes and disruptions.

40.    In addition, access to the electronic versions of the CPM schedule for the Project would have allowed Kinetics to contemporaneously assess if and how modifications affected the planned sequence of the work, whether such modifications would result in any delays to the scheduled duration of the work, and what, if any, additional costs would be incurred as a result of the changed work.

41.    Kinetics made repeated verbal and written requests to MTJV for the electronic versions of the Project schedule so that it could perform the above-referenced analyses and properly plan its work.

42.    MTJV unjustifiably denied Kinetics' requests for the electronic versions of the CPM schedule.

43.    MTJV's continued failure and/or refusal to provide the electronic versions of the CPM schedule updates has hampered, and continues to hamper, Kinetics' ability throughout the course of the Project to plan and perform its work, identify the causes of delays and disruptions, cope with the magnitude of delays and disruptions, and quantify the cost and time impacts of particular change events and schedule amendments.

**E.    MTJV Improperly Abandoned the Project Schedule as a Means of Coordinating the Performance of Work**

44.    MTJV, despite maintaining CPM schedule updates for submissions to the Corps, effectively stopped using the CPM schedule as a means of managing and directing the work.

45.    Instead, MTJV began employing an extra-contractual process of providing three-week "look ahead" bar charts to manage and direct Kinetics' work.

46.    Abandoning the CPM schedule in favor of 3-week "look aheads" was an ineffective approach to coordinating subcontractors, as the bar charts did not, and could not, include the logic ties between linked activities in the CPM schedule or provide an accurate, detailed, long term plan for completing the Project.

47.    Because MTJV abandoned the contractually-mandated CPM schedule when coordinating the work, Kinetics could not forecast beyond a three-week snapshot when predecessor work would be complete.

48.    The uncertainty resulting from the three-week "look aheads" prevented any semblance of orderly flow or sequenced progression and required Kinetics to constantly readjust its work plan.

49.    On or about August 18, 2013, a fire occurred that damaged major portions of Kinetics' previously-installed work in certain areas of the Project, as well as the work of other subcontractors.

50.    The fire was not caused by Kinetics.

51.    Substantial sections of the Project have been sequestered for an investigation of the cause of the fire, as well as the extent of the resulting damage.

52.    As a consequence of the fire, completion of the Project will be further delayed by the investigation and repair or replacement of the damaged work.

53.     As of yet, MTJV has failed to provide a remediation/repair plan for the extensive fire damage, and, even as it continues to extend the overall schedule for other reasons, the remediation/repair work has not yet been incorporated into the Project schedule.

54.     Consequently, MTJV cannot forecast the Project end-date, thereby acknowledging its complete abandonment of the Project schedule.

55.     The abandonment of a CPM schedule as a means of coordinating subcontractor work has hindered, and continues to hinder, Kinetics' ability to plan and perform its work, cope with the magnitude of delays and disruptions, and measure the cost and time impacts of changes, delays and disruptions to the Project.

**F.     MTJV Failed to Grant Equitable Adjustments to the Subcontract Price and Time**

56.     As a result of design errors and omissions, along with other changes and alterations to the original Mechanical Piping Design, Kinetics was directed and/or required to perform substantial work that was not originally within its scope of work under the Subcontract.

57.     Kinetics properly submitted proposals for the changed work to MTJV to serve as the basis for change orders to formally modify the Subcontract price and time.

58.     Contrary to MTJV's obligations under the Subcontract, MTJV has failed and/or refused to properly administer and/or timely process Kinetics' change order proposals.

59.     Several cost proposals for changed work have been pending for an unreasonable period of time and still have not been resolved by MTJV.

60.     For example, Change Proposal 120 addressing some of the additional detailing costs incurred during the 3-D modeling process was submitted to MTJV on January 6, 2012 and, unreasonably and without any justification, has been pending resolution for almost two (2) years.

61.     As another example of an unreasonably delayed change to Kinetics' Subcontract, Kinetics submitted Change Proposal 186 covering the undisputed extra work to install a 10-inch

main pipe to the pump house, which unreasonably and without any justification, has been pending resolution since April 17, 2012 (over one (1) and one-half (1/2) years).

62.     Other indisputable MTJV-directed changes to Kinetics' Subcontract which remain outstanding for unreasonable periods of time, include, but are not necessarily limited to, Kinetics' Change Proposal Nos. 90, 163, 171, 226, 234, 237, 244, 245, 248, 255, 259, 260, 261, 270, 276, and 277.

63.     Other change proposals that MTJV has failed to properly administer include Kinetics' Change Proposal Nos. 186, 208, 211, 238, 243, 249, 250, 252, 253, 256, 257, 258, 262, 263, 264, 265, 266, 275, 278, 279, 281, 282, and 283.

64.     MTJV's failure to timely process and resolve Kinetics' outstanding change proposals violates its Subcontract obligations and has unjustifiably placed the burden on Kinetics to finance the performance of out-of-scope work directed by MTJV for unreasonable periods of time.

65.     Kinetics has advised MTJV on numerous occasions that its failure to properly process and resolve change proposals is severely restricting Kinetics' cash flow; yet, MTJV has not taken any action to remedy this breach.

66.     In addition to unreasonably requiring Kinetics to finance changes to the work for inordinate time periods, MTJV has breached the Subcontract by failing and/or refusing to fully compensate Kinetics for all of the time and cost impacts of the changed work that Kinetics was directed or required to perform.

67.     To date, Kinetics has submitted change proposals totaling approximately $4,829,467, which amount is presently due and owing and remains unpaid by MTJV.

68.     By not properly administering the change order process, which has presently left

Kinetics unpaid for pending change proposals in the approximate amount of $4,829,467, MTJV has materially breached the Subcontract.

**G.     Kinetics Suffered Significant Productivity Losses and Extended Labor Costs as a Result of Design Changes and Schedule Disruptions**

69.     MTJV's failure to provide an integrated and constructible design for construction, its failure to properly coordinate design changes and other change events among Project subcontractors, and its decision to manage subcontractor work with three-week "look ahead" bar charts instead of a CPM schedule, resulted in Kinetics experiencing numerous instances of disruptions, delays, out-of-sequence work and access limitations during the course of the Project.

70.     Due to delays and disruptions for which Kinetics is not responsible, Kinetics could not perform its work in an orderly manner as it reasonably anticipated at the time it entered into the Subcontract, which has caused Kinetics to incur significant, unreimbursed costs for direct craft labor.

71.     Due to events not caused by Kinetics, and which are beyond its control, MTJV has implemented heightened site security measures that have restricted Kinetics' site access, limiting its anticipated work hours and productivity and increasing its costs.

72.     In addition, due to delays and disruptions for which Kinetics is not responsible, completion of the Project was estimated to extend approximately two years beyond the originally scheduled completion date.

73.     MTJV has indicated it presently cannot provide Kinetics a complete schedule with an end date because the final scope and duration of the Project is supposedly unknown.

74.     As a result of the Project delays and disruptions for which Kinetics is not responsible, Kinetics could not manage its workforce on the Project according to its plan.

75.     The delay and disruptions to the Project have now been exacerbated by MTJV's

complete abandonment of the schedule and its inability to forecast a project end date.

76.     Because of delays and disruptions to the Project schedule, Kinetics has been forced to maintain pipe installation crews, supervisory staff (such as project managers, project engineers, superintendents, foremen, QA/QC officers, safety officers, detailers, and administrative assistants), as well as its field office operations, for significantly longer periods than it had reasonably anticipated.

77.     The delays and disruptions to the Project schedule have also resulted in unabsorbed home office expenses which should be reimbursed by MTJV.

78.     Costs associated with delays and disruptions are likely to increase, as Kinetics currently cannot identify the full extent of its increased Project costs because of the unknown scope and duration of the Project.

79.     To date, MTJV has failed and/or refused to consider and compensate Kinetics for the costs incurred as described above.

**H.     MTJV Is Improperly Refusing to Compensate Kinetics for Increased Costs Caused By Fire Damage to the Project Which Kinetics Did Not Cause**

80.     As a result of the indefinite delay period caused by the extensive fire damage, Kinetics would incur substantial additional costs to repair or replace its work damaged by the fire.

81.     In addition, completion of Kinetics' remaining, original scope of work has been, and will continue to be, hindered as a result of the degraded Project conditions, including but not limited to the lack of and/or obstructed access to sequestered areas and also the need to work around impacted areas.

82.     Despite the fact that Kinetics is not at fault, in whole or in part, for causing the fire, MTJV has stated that it will not compensate Kinetics for the costs of extended performance

and disruptions associated with the fire damage repairs and that such costs are not recoverable under the builder's risk insurance policy it procured for the Project.

83.      MTJV is basing its denial of these costs on an interpretation of Section 2.4.1 of the Subcontract.

84.      Kinetics disagrees with MTJV's interpretation of Section 2.4.1 of the Subcontract.

85.      If MTJV's interpretation of Section 2.4.1 would prevail, the provision would nevertheless be rendered void and unenforceable.

86.      If Kinetics is forced to shoulder the costs of repairs, as well as the substantial extended performance and disruption costs resulting from the repairs, Kinetics will suffer severe financial hardship.

**COUNT ONE**
**(CONSTRUCTIVE FRAUD AND/OR NEGLIGENT MISREPRESENTATION)**

87.      Kinetics incorporates by reference each and every allegation contained in Paragraphs 1-86 as if fully set forth herein.

88.      In connection with procuring bids and the Subcontract for the Project, MTJV furnished the Mechanical Piping Design representing the manner in which the piping work was to be constructed.

89.      MTJV intended for Kinetics to rely upon the Mechanical Piping Design and the representations made therein in preparing its bid and entering into the Subcontract for the Project.

90.      The Mechanical Piping Design purported to be complete and sufficient for purposes of bidding, contract negotiation, as well as planning for and executing the construction.

91.      The completeness of the Mechanical Piping Design was a material fact pertinent to Kinetics' preparation of its bid and its decision to enter into the Subcontract to perform work

on the Project.

92.  At no point prior to execution of the Subcontract did MTJV or any of its representatives or agents advise Kinetics that the Mechanical Piping Design was incomplete, not fully integrated with other elements of the Project, or that the Project could not be built as specified.

93.  Contrary to the representations made by MTJV in issuing the Mechanical Piping Design, the piping work could not be properly installed as specified.

94.  MTJV concealed or failed to disclose the inadequacy, insufficiency and/or lack of completeness of the Mechanical Piping Design which formed the basis of Kinetics' bid and decision to enter into the Subcontract.

95.  Kinetics was entitled to and did rely upon the material and ultimately false representations made by MTJV with regard to the completeness and sufficiency of the Mechanical Piping Design that it furnished to Kinetics.

96.  MTJV owed a duty to Kinetics to refrain from making misrepresentations of material fact in procuring the Subcontract, and, conversely, was under a duty to disclose the material facts regarding the incompleteness and insufficiency of the plans and specifications, which duties MTJV breached.

97.  MTJV knew or should have known it was making false representations of material fact regarding the completeness and/or sufficiency of the Mechanical Piping Design and the work to be performed by Kinetics.

98.  Several years into its Subcontract performance, Kinetics was advised by an MTJV representative that MTJV was aware that the Corps knowingly had not coordinated and/or fully integrated the Mechanical Piping Design into other elements of the Project design prior to

soliciting bids for the Project.

99.    Throughout the course of the Project, MTJV had directed Kinetics to perform additional work without disclosing the fact that it was understood by MTJV and the Corps that the Project design was incomplete, not coordinated and/or fully integrated prior to soliciting bids, which non-disclosure constituted assertions to the contrary.

100.    Upon learning that the Project design was incomplete, not coordinated and/or fully integrated, MTJV possessed a duty to disclose such material facts to Kinetics.

101.    Kinetics has suffered significant damages as a result of reliance upon MTJV's concealment, non-disclosure and/or overt misrepresentations of material facts with respect to the completeness and sufficiency of the Project plans and specifications.

102.    Kinetics is entitled to recover attorneys' fees incurred in this action pursuant to the terms of the Subcontract.

WHEREFORE, Kinetics demands that judgment be entered jointly and severally against the Defendants in an amount to be proven at trial, but not less than $12,000,000, plus interest, costs and attorneys' fees and such other relief as the Court may deem just and appropriate.

## COUNT TWO
### (BREACH OF CONTRACT – MONETARY DAMAGES)

103.    Kinetics incorporates by reference each and every allegation contained in Paragraphs 1-102 as if fully set forth herein.

104.    MTJV and Kinetics entered into the Subcontract which Kinetics is legally entitled to enforce.

105.    To date, Kinetics has performed all of the conditions precedent, covenants, and promises it was obligated to perform under the terms and conditions of the Subcontract and applicable law.

106.   Pursuant to the express and implied terms of the Subcontract, MTJV assumed several obligations and duties, including among them the obligations identified in Paragraph 23 and elsewhere in this Complaint.

107.   MTJV has breached the express and implied terms of the Subcontract in, among other ways, the following respects:

a.      MTJV failed to provide complete and accurate design documents, including plans and specifications, that properly integrated Kinetics' scope of work into the overall Project design;

b.      MTJV caused unreasonable and uncontemplated delay, interruption, obstruction, and otherwise hindered and actively interfered with Kinetics' performance of its Subcontract work;

c.      MTJV maladministered the changes and claims process by failing to timely review and resolve outstanding change proposals submitted by Kinetics;

d.      MTJV arbitrarily and unfairly exercised discretion afforded to it under the Subcontract;

e.      MTJV failed to share important Project-related information, process change proposals, and manage the Project schedule in accordance with the Subcontract and the usual and customary practice in the industry;

f.      MTJV failed to make full and timely payments due under the Subcontract and/or for changes;

g.      MTJV failed to equitably adjust the Subcontract pricing and time to compensate Kinetics for delays, interruptions, obstructions, hindrances and changed and/or extra work caused by the actions and/or inactions of MTJV or others;

h.      MTJV unreasonably and unjustifiably refused and/or failed to provide Kinetics with access to the electronic versions of the CPM schedule updates that MTJV was submitting to the Corps;

i.      MTJV failed to properly manage Kinetics' work by abandoning the use of a CPM schedule and replacing it with ineffective scheduling practices such as 3-week "look ahead" bar charts;

j.      MTJV has wholly abandoned the Project schedule by failing to incorporate changes, including the fire event, into the schedule, leaving the Project with an indefinite end date and indefinite final scope; and

k.      MTJV has wrongly refused to compensate Kinetics for costs resulting from the Project fire, notwithstanding the fact that Kinetics had no role in causing the fire in question.

108.    As a result of MTJV's breaches, Kinetics has suffered in excess of $8,000,000 in damages and will continue to suffer damages relating to MTJV's refusal to compensate Kinetics for out of scope work and other extra-contractual demands.

109.    Kinetics is entitled to recover attorneys' fees incurred in this action pursuant to the terms of the Subcontract.

WHEREFORE, Kinetics demands that judgment be entered jointly and severally against the Defendants in an amount to be proven at trial, but not less than $8,000,000, plus interest, costs and attorneys' fees and such other relief as the Court may deem just and appropriate.

### COUNT THREE
### (MATERIAL BREACH OF CONTRACT – RESCISSION)

110.    Kinetics incorporates by reference each and every allegation contained in Paragraphs 1-109 as if fully set forth herein.

111.    MTJV and Kinetics entered into the Subcontract which Kinetics is legally entitled to enforce.

112.    To date, Kinetics has performed all of the conditions precedent, covenants, and promises it was obligated to perform under the terms and conditions of the Subcontract and applicable law.

113.    Pursuant to the express and implied terms of the Subcontract, MTJV assumed several obligations and duties, including among them the obligations identified in Paragraph 23 and elsewhere in this Complaint.

114.    MTJV has materially breached the express and implied terms of the Subcontract in, among other things, the following respects set forth elsewhere in this Complaint:

a.      MTJV failed to provide complete and accurate design documents, including plans and specifications, that properly integrated Kinetics' scope of work into the overall Project design;

b.      MTJV failed to make full and timely payments due under the Subcontract and/or for changes;

c.      MTJV failed to equitably adjust the Subcontract pricing and time to compensate Kinetics for delays, interruptions, obstructions, hindrances and changed and/or extra work caused by the actions and/or inactions of MTJV or others;

d.      MTJV failed to properly manage Kinetics' work by abandoning the use of a CPM schedule and replacing it with ineffective scheduling practices such as 3-week "look ahead" bar charts; and

e.      MTJV has wholly abandoned the Project schedule by failing to incorporate changes, including the fire event, into the schedule, leaving the Project with an

indefinite end date and indefinite final scope.

115.   In addition, on August 18, 2013, a fire occurred on the Project resulting in significant damage, including damage to the work performed by Kinetics pursuant to its Subcontract.

116.   Despite the fact that Kinetics did not cause the fire to occur on the Project, MTJV demands that Kinetics perform significant restorative work at its own expense.

117.   MTJV has declared, unequivocally, that it will not pay Kinetics for the substantial extended performance and disruption costs associated with repairing the fire damage to its work.

118.   MTJV's refusal to fully pay for the costs of making good the work damaged by the fire constitutes an anticipatory and material breach of the Subcontract, for which there is no adequate remedy at law.

119.   Kinetics is entitled to recover attorneys' fees incurred in this action.

WHEREFORE, as a result of MTJV's material and anticipatory breaches, Kinetics demands that the Subcontract be rescinded, that Kinetics be restored to the position it occupied before entering into the Subcontract, and that it recover attorneys' fees incurred in this action.

## COUNT FOUR
### (QUANTUM MERUIT/UNJUST ENRICHMENT)

120.   Kinetics incorporates by reference each and every allegation contained in Paragraphs 1-119 as if fully set forth herein.

121.   Kinetics pleads Count Four as an alternative theory of relief to its contract claims in this Complaint.

122.   Kinetics provided labor and materials on the Project, which benefited MTJV.

123.   MTJV requested, caused and directed that Kinetics provide labor and materials to the Project.

124.    Kinetics provided the requested labor and materials and has not been compensated in full by MTJV.

125.    MTJV accepted the benefit of Kinetics' labor and materials on the Project with knowledge that Kinetics expected to be paid by MTJV.

126.    The reasonable value of the work Kinetics performed on the Project and resulting benefit to MTJV for which payment has not been made is at least $12,000,000.

127.    Kinetics is entitled to payment for this work and benefit to MTJV in an amount of at least $12,000,000.  Despite demands by Kinetics, MTJV has failed or refused to pay Kinetics the reasonable value for its work.

128.    As a direct and proximate cause of the foregoing, Kinetics has been damaged in an amount to be proven at trial, but not less than $12,000,000.

WHEREFORE, Kinetics respectfully requests that this Court enter judgment in its favor against MTJV in an amount to be proven at trial, but not less than $12,000,000, plus interest, costs and attorneys' fees and such other relief as the Court may deem just and appropriate.

## COUNT FIVE
### (DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §§ 2201 AND 2202)

129.    Kinetics incorporates by reference each and every allegation contained in Paragraphs 1-128 as if fully set forth herein.

130.    On or about August 18, 2013, a fire occurred on the Project resulting in significant damage, including damage to the work performed by Kinetics pursuant to its Subcontract.

131.    At a recent job site meeting in October 2013, MTJV asserted that it would not pay Kinetics for substantial costs to be incurred when restoring the Project to its pre-fire condition. As grounds for its position that Kinetics would be made to absorb extreme losses for the repair

costs, irrespective of who caused the fire, MTJV has referenced Article 2.4.1 of the Subcontract.

Article 2.4.1 provides in relevant part as follows:

> in the event of any loss, damage or destruction thereof *from any cause, Subcontractor shall be liable therefor* and shall repair, rebuild and make good said loss, damage or destruction at Subcontractor's cost, except to the extent of any recoveries or payments from Builder's Risk or property insurance, if any applicable to such loss, damage or destruction.  (Emphasis added).

132.    Based upon its interpretation of the foregoing provision, and despite the fact that Kinetics did not cause the fire to occur, MTJV has directed Kinetics to perform significant restorative work at its own expense.

133.    Kinetics will suffer immeasurable financial hardship if made to comply with MTJV's demands.

134.    Kinetics desires a judicial determination as to whether this clause – which could be read to impose liability upon Kinetics for MTJV's own negligence – is void *ab initio* pursuant to applicable law.

135.    MTJV disputes that this clause is void and unenforceable.

136.    Conflicting views as to the enforceability of Article 2.4.1 have given rise to a justiciable controversy, thus necessitating a determination by this Court as to whether this clause is void pursuant to public policy reflected in applicable law.

137.    Kinetics is entitled to a Declaratory Judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, concerning the respective rights and obligations of the parties under the Subcontract.

138.    Kinetics is entitled to recover attorneys' fees incurred in this action pursuant to the terms of the Subcontract.

WHEREFORE, Kinetics requests declaratory relief confirming that Article 2.4.1 of the Subcontract is void and unenforceable pursuant to applicable law.

## JURY DEMAND

A trial by jury is hereby requested for all issues.

Dated:   December 26, 2013.

Respectfully submitted,

**KINETIC SYSTEMS, INC.**

By Counsel:

Christopher J. Brasco (VSB #31873)
Hanna Lee Blake (VSB #70026)
Kirk J. McCormick (VSB #47156)
**WATT, TIEDER, HOFFAR & FITZGERALD, LLP**
8405 Greensboro Drive, Suite 100
McLean, VA  22102
Tel:  703-749-1000
Fax:  703-893-8029